## Case No. 6,589.

HOLBROOK et al. v. AMERICAN INS. CO.

[1 Curt. 193; 1 1 Am. Law Reg. 18.]

Circuit Court, D. Rhode Island. June Term, 1852.

FIRE POLICY—SUBSEQUENT INSURANCE—"ASSIGNS"—INTEREST OF ASSURED.

1. Construction of clauses in fire policy respecting subsequent insurance, and termination of interest.

2. Meaning of the word "assigns."

3. A conveyance, which equity will treat as a mortgage, does not terminate the interest of the assured.

[Cited in Judge v. Connecticut Fire Ins. Co., 132 Mass. 524; Commercial Union Assur. Co. v. Scammon, 126 Ill. 359, 18 N. E. 562.]

4. Insurance, made by a mortgagee at the expense of the mortgagor, is subsequent insurance by the mortgagor.

[Cited in The Sidney, 23 Fed. 94.]

[Cited in Wood v. North Western Ins. Co., 46 N. Y. 424.]

This was an action on a policy of insurance against fire, underwritten by the defendants in the sum of seventy-five hundred dollars, on movable machinery, and stock, in a cotton-mill. The destruction of the property by fire being admitted, and the preliminary proof of loss required by the policy having been proved, the defence turned on two clauses in the policy; which were in the following words: "And if the said insured, or their assigns, shall hereafter make any other insurance on the same property, and shall not forthwith give notice thereof to this corporation, and have the same indorsed on this instrument, or otherwise acknowledged by them in writing, this policy shall cease, and be of no further effect." . . . "The interest of the assured, in this policy, is not assignable, unless by consent of this corporation, manifested in writing, and in case of any transfer or termination of the interest of the insured in this policy, either by sale, or otherwise, without such consent, this policy shall, from thenceforth, be void and of no effect." It appeared that on the 25th of April, 1850, while the policy was in force, and before the loss, the plaintiffs made a bill of sale of a large part of the property mentioned in the policy, to Shepherd, Wright & Ripley, of New York, who were the plaintiffs' factors, and to whom the plaintiffs were indebted, for a balance of account, in the sum of $20,910, and at the same time and as part of the same transaction, Shepherd, Wright & Ripley executed an instrument in the following words: —"This indenture, made this twenty-fifth

1 [Reported by Hon. B. R. Curtis, Circuit Justice.]

day of April, in the year of our Lord one thousand eight hundred and fifty, by and between Messrs. Shepherd,. Wright & Ripley, of the city, county, and state of New York, commission merchants, of the one part, and Sylvanus Holbrook & Company, of Northbridge, county of Worcester, and state of Massachusetts, of the other part, witnesseth, that the said Shepherd, Wright & Ripley do hereby lease, demise, and let unto the said Holbrook & Company, all that portion of cotton machinery which the said Holbrook & Company have sold to said Shepherd, Wright & Ripley, by bill of even date, amounting to the sum of· twenty thousand nine hundred and ten dollars, all now in good running order, placed in the mill now occupied by the said Holbrook & Company—to hold ·for the term of five years from date, the said lessees yielding and paying therefor at the office of Messrs. Shepherd, Wright & Ripley, New York, the sum of two thousand one hundred dollars annually; and whenever the said Holbrook & Company, or their representatives, have or do pay the sum of twenty thousand nine hundred and ten dollars, and interest upon ·that amount at the rate of seven per cent. per annum, the said lessors agree to sell it to them, and the said lessors do promise that while the lessees and their representatives pay the rent, taxes, and insurance, and keep the same in good repair, they shall peaceably enjoy the same. The said lessees promising to pay the rent at the time aforesaid, and to quit and deliver up the same at the end of the term in as good order as the same now are. In witness whereof, the said parties have hereunto set their hands and seals the day and year above written. Shepherd, Wright & Ripley, (L. S.) Sylvanus Holbrook & Co. (L. S.) Signed, sealed, and delivered in presence of Philander Hale." Ripley, one of the firm, testified that the object of the parties was to give and take security for their balance of account; that there was no consideration paid by them, and no change was made in their accounts, or the mode of keeping them, in consequence of the conveyance. That his firm instructed their agents at Worcester, Massachusetts, to obtain insurance on their interest in the property, and a policy was obtained at the Howard office, in Lowell, for $5,000, and another for the same ˉsum at another office in Rome, N. Y.; that the plaintiffs did not know of the existence of either of these policies, so far as the witness knew or believed. That the amounts of these policies had been paid to his firm, and carried into a special account, the name of which he could· not recollect, but it contained nothing but the premiums and the two sums of $5,000 each; and that when they should settle with the plaintiffs, the balance of this account would be passed to their credit. The policy at the Howard office was produced, and it appeared to have .originally described the insured as

mortgagees, ·but the word had been erased. In their representation, claim, and proof of loss, Shepherd, Wright & Ripley did not treat theirs as a mortgage interest, but as. being the whole property, subject to a prior mortgage to a third person.

Carpenter and Jenckes, for plaintiffs.

Ames and Bradley, for defendants.

CURTIS, Circuit Justice. The clause in the policy, which declares the interest of the insured therein not to be assignable, has no application to this case, unless the insured, by making such a transfer of the property as deprived them of their insurable interest therein, have worked "a termination of the interest of the insured in this policy" within the meaning of this clause; and the inquiry is, has there been such a termination? The first reason why their interest in the policy is not terminated, is found in the fact, that only a part of the property insured was conveyed to Shepherd, Wright & Ripley. The policy continued to cover so much as remained. But at the same time, if a part of the property insured was sold, it ceased thereby to be at the risk of the underwriters; and in adjusting the loss on the residue, the amount thus sold must be treated as if not put at risk, and the sum insured reduced proportionably; and as these plaintiffs claim to recover the whole amount insured in this policy, it becomes necessary to consider the effect of the conveyance they made. It was not a legal mortgage, for that requires a defeasance. which, on performance of the condition, would revest the legal title in the grantors. The indenture contains no such defeasance. But in equity, a conveyance of property, by way of security for a debt, is treated .as a mortgage, whatever form the parties may have adopted to effect that object. In this case they have described, in words, a conditional sale, with a right of repurchase; but as it clearly appears that the sole consideration was a debt due from the grantors to the grantees, that the debt was not extinguished, and that the only object the parties had in view was to give and take security for that debt, and the interest which should accrue thereon, the conveyance could not be allowed to operate otherwise than as a mortgage between the parties. Russell v. Southard, 12 How. [53 U. S.] 139. There remained, therefore, in the plaintiffs the same insurable interest as before; for the property standing as security only for their. debt, the loss to them by its destruction would be the same as if no such mortgage interest had been created. Higginson v. Dall, 13 Mass. 96; Bartlet v. Walter, Id. 267; Gordon v. Massachusetts Fire & Marine Ins. Co., 2 Pick. 249; Lazarus v. Commonwealth Ins. Co., 5 Pick. 76, 19 Pick. 81; Gilbert v. North American Fire Ins. Co., 23 Wend. 43; Swift v. Vermont Mut. Fire Ins. Co., 18 Vt. 305; Tittemore v. Vermont Mut. Fire Ins. Co., 20 Vt. 546. Independent of this clause in the policy,

and of other facts presently to be mentioned, it might have been necessary to submit to the jury the question, whether this change in the title was material to, and did work a change in the risk. In the case of Columbian Ins. Co. v. Lawrence, 2 Pet. [27 U. S.] 25, the supreme court held, that the difference between absolute legal title and a conditional equitable title might be material to the risk, and that it could not be declared, as a legal result, that one was in substance the same as the other, as a subject of insurance. But in this case the underwriters inquired, before making the insurance, whether the property was under mortgage, and for how much, and to whom, and whether the mortgagee had insurance; to these inquiries the insured replied, in writing, that "the property is mortgaged, and the mortgagee has no insurance, to our knowledge." Having been satisfied with this answer, and content to effect the policy without knowing the amount of the incumbrance, it would be difficult for them now to complain of the creation of an incumbrance on the property, the possession, and custody, and substantial interest of the insured remaining the same. But however this might be, I consider this express clause in the policy as governing the rights of both the parties in this particular. It provides only for a termination of the interest of the insured. Nothing short of that is to avoid the policy; and I do not think it is open to the insurer to say, that though less than this has occurred, the policy is void. If it was intended to have a change in the legal title, which worked no change in the insurable interest, affect the policy, they should not have declared that a termination of the interest of the assured should have that effect, and been silent as to all other changes of interest. I am of opinion that there is no defence to any part of the claim, under this clause of the policy.

Under the other clause of the policy it has been argued that the word "assigns" means any one who takes an interest in the property from the insured, and that as Shepherd, Wright & Ripley did take such an interest, and procured insurance on the property, and no notice was given to the defendants, this policy ceased and became void. I do not think this is the meaning of the word assigns, in this connection. This policy may be assigned to a purchaser of the property, with the assent of the underwriters. Being thus owner of the property and the policy, such purchaser would stand in place of the insured, and ought to be subjected to the same restraint as to subsequent insurance, intended to be placed on the latter by this clause. Yet it may well be doubted whether he would have been within the restriction, if not expressly named; and for this reason only, I consider, he was named. The word does not apply to an absolute purchaser of the property, who does not become the assignee of the policy with the assent of the office, for such a

purchase, of itself, puts an end to the policy. It does not apply to one who acquires merely a lien, or other interest by way of mortgage, because he is not properly the assign of the insured, whose interest and property have not passed to him, but who, by virtue of his general property, has created a qualified and special interest only, and conveyed that. Moreover, unless the mortgagee insures for the account of the mortgagor, a case which will be presently noticed, insurance by him is not within the mischief intended to be guarded against, which is, such further insurance as would lessen the interest of the insured in the preservation of the property. If the insured can have no benefit from the subsequent insurance it can have no such effect, and he can have no benefit from it, if procured by the mortgagee for his own account and at his own expense. We must, therefore, consider whether the insurance effected by Shepherd, Wright & Ripley was subsequent insurance effected "by the insured in this policy." And there are two events in which I am of opinion it is to be so treated. In the first place, Shepherd, Wright & Ripley held the legal title. It was competent for them to cover, by insurance, not merely their own special interest in the property, but the property itself. Viewed as trustees, or as mortgagees, they might do so. Lucena v. Craufurd, 2 Bos. & P. (N. R.) 324; Irving v. Richardson, 2 Barn. & Adol. 193, 1 Moody & R. 153; Carruthers v. Sheddon, 6 Taunt. 17. If, in point of fact, they did cover the whole property, and were in any manner authorized by the plaintiffs to do so, then, in my judgment, there was subsequent insurance made by the plaintiffs; for it is wholly immaterial in whose name it was done. It is the thing, and not any particular form of doing it, which this clause was intended to guard against, and that thing is such subsequent insurance on the property as would lessen the interest of the insured in its preservation; and this includes all subsequent insurance, which, when recovered, will go to the benefit of the insured in the first policy. And so if the mortgagees did, in fact, cover their own special interest as mortgagees, and the mortgagors agreed to pay the expense of obtaining the insurance, then, although mortgagees would have a lien on the insurance money, as security for their debt, yet the mortgagors could compel its application to the payment of the debt, and any surplus would belong to themselves. In these cases the subsequent insurance, being effected by the authority of the insured, for their benefit, and at their expense, must be deemed to be effected by them, within the meaning of this clause in the policy.

Whether this case comes within the interpretation of the policy, is a question of fact for the jury. There is nothing decisive in the instrument executed by the plaintiffs, and Shepherd, Wright & Ripley. What is there said concerning the payment for in-

surance, is introduced as a qualification of the covenant of the lessors. It may be evidence that there was some understanding between the parties on that subject, but in itself it only qualifies the lessors' covenant. So the testimony of Ripley, though it proves the insurance money is now intended to be credited hereafter to the plaintiffs, does not enable the court to say that the insurance effected by them was for account of the plaintiffs. I shall submit to the jury the questions of fact, in substance as follows:—If the insurance obtained by Shepherd, Wright & Ripley nominally covered the whole property, and not merely their interest in it, and they were in any manner authorized by the plaintiffs so to insure, or if there was any agreement between the plaintiffs and Shepherd, Wright & Ripley, that the former would pay the cost of insuring the special interest of Shepherd, Wright & Ripley, or any part of it, then there was subsequent insurance within the meaning of the policy, and the plaintiffs cannot recover.